USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/15/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAMONA DIAZ,

                    Plaintiff,

       - against -

JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

05 Civ. 3392 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

The plaintiff, Ramona Diaz ("Diaz"), brings this action pursuant to § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), and Section 1631(c) of the Act, 42 U.S.C. § 1383(c)(3), to review a final determination by the Commissioner of Social Security ("Commissioner") denying her a period of Supplemental Security Income ("SSI") disability benefits. A hearing was held before an Administrative Law Judge ("ALJ") on May 5, 2003, to determine the plaintiff's eligibility for benefits. On June 20, 2003, the ALJ issued a decision denying the plaintiff's claim for disability benefits. The Appeals Council denied the plaintiff's claim for review on January 27, 2005, making the ALJ's decision the final decision of the Commissioner. The plaintiff then brought this action appealing that decision. The defendant has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

- 1 -

For the reasons explained below, substantial evidence supports the Commissioner's determination that the plaintiff is not "disabled" within the meaning of the Act, and therefore, not entitled to SSI benefits. Therefore, the defendant's motion for judgment on the pleadings is **granted**.

**I.**

The plaintiff was born on May 4, 1952 (R. at 30), and was fifty-one years old at the time of the hearing before the ALJ. (R. at 252, 255.)  She completed the seventh grade while in the Dominican Republic (R. at 48), and speaks, reads, and writes only in Spanish.  Ms. Diaz was last employed as a home attendant from in 1991.[1]  (R. at 43.)  Ms. Diaz claims in her Social Security Administration ("SSA") disability report that since 1991, she has suffered from sleep apnea, asthma, vertigo, respiratory problems, knee problems, diabetes, high blood pressure, and kidney problems, which render her unable to work.  (R. at 42, 85, 240-45.)  In addition, Ms. Diaz's medical records contain numerous diagnoses and treatments for carpal tunnel syndrome, allergic rhinitis, and depression (R. at 151, 153, 190, 191, 201-238, 240), as well as several diagnoses of obesity (R. at 85, 168, 180, 191).  Ms. Diaz

---

[1] In her SSA Disability Report dated February 26, 2002, Ms. Diaz indicated that she stopped working because she "became ill and couldn't function properly."  (R. at 42.)  However, in her testimony to the ALJ, Ms. Diaz cites her daughter's pregnancy as the reason she stopped working.  (R. at 258.)

complains that these medical conditions cause her to suffer from dizzy spells (R. at 64, 68, 146), difficulty breathing and sleeping (R. at 64, 182), an inability to lift objects (R. at 64), or to hold on to objects with her right hand (R. at 64), and difficulty in standing and walking (R. at 51, 168). The record also indicates that Ms. Diaz has been diagnosed with Type II diabetes mellitus, degenerative joint disease, and osteo-arthritis. (R. at 183, 194-95.)

Ms. Diaz has also complained of suffering brought on by mental impairments. Specifically, the record indicates that Ms. Diaz has been diagnosed with recurrent Major Depressive Disorder with psychotic features (R. at 211), and that this impairment has caused Ms. Diaz to have some hallucinations (R. at 206-07).

## II.

A court may reverse a factual finding of the Commissioner only if it is based on legal error or is not supported by substantial evidence in the record. 42 U.S.C § 405(g); see also Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

A claimant seeking SSI benefits is considered disabled if the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).[2]  In making the determination whether an individual is disabled, the ALJ must use a "five-step sequential evaluation process" in which the ALJ considers all the evidence provided in the claimant's case record. 20 C.F.R. § 416.920(a)(1), (3); see also Schaal, 134 F.3d at 502. Such evidence includes (1) objective medical facts and findings; (2) medical diagnoses and opinions of examining physicians; (3) subjective evidence of pain and physical incapacity suffered by the plaintiff based on her testimony and the testimony of those who observed her; and (4) the plaintiff's age, educational background, and work history. See Carroll v. Sec. of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Villanueva v. Barnhart, 03 Civ. 9021, 2005 WL 22846, at *4 n.5 (S.D.N.Y. Jan. 3, 2005)(collecting cases).  The ALJ must give controlling weight to

---

[2] The definition of disability for the purposes of disability insurance benefits under Title II of the Act is similar. See 42 U.S.C. § 423(d)(1)(A). The determination of disability under Title II is also similar to the determination of disability for purposes of SSI disability benefits under Title XVI of the Act. Ramos v. Apfel, No 97 Civ. 6435, 1999 WL 13043, at *4, n.1 (S.D.N.Y. Jan. 12, 1999).  Cases under 42 U.S.C. § 423 are cited interchangeably with cases under 42 U.S.C. § 1382c(a)(3).  See Hankerson v. Harris, 636 F.2d 893, 895 n.2 (2d Cir. 1980); Villanueva v. Barnhart, 03 Civ. 9021, 2005 WL 22846, at *4 n.5 (S.D.N.Y. Jan. 3, 2005).

the opinion of a treating physician when it is "well supported by

medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence" in

the plaintiff's case record.  20 C.F.R. § 416.927(d); see also

Rosa v. Callahan, 268 F.3d 72, 78-79 (2d Cir. 1999); Clark v.

Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

     The well established five step sequential process that the

ALJ must follow in determining disability is as follows.  The ALJ

must first determine whether the claimant is engaged in any

substantial gainful activity.  If the claimant is engaged in such

activity, the claimant will be found not disabled, regardless of

medical condition.  Where the claimant is not, the ALJ next

considers whether the claimant has a "severe impairment" or

combination of impairments that significantly limits the

claimant's physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is

whether the claimant's impairment meets or equals a listed

impairment under Appendix 1 of the regulations.  See 20 C.F.R.

Pt. 404, Subpart P, App. 1.  If the claimant has such a listed

impairment, the claimant will be found disabled.  If the claimant

does not have a listed impairment, the fourth inquiry is whether,

despite the claimant's severe impairment, the claimant has the

residual functional capacity to perform the claimant's past

relevant work. If the claimant can still perform that type of work, the claimant will be considered not disabled. Otherwise, the ALJ proceeds to the fifth step to determine whether there is other work that the claimant could perform given the claimant's residual functional capacity as well as the claimant's age, educational and work experience. The claimant bears the burden of proof on the first four steps of the analysis, while the burden shifts to the Commissioner on the fifth step to prove that there is other work in the national economy that the claimant could perform. See 20 C.F.R. § 416.920(a)(4); Jasinski v. Barnhart, 341 F.3d 182, 184 (2d Cir. 2003); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).

### III.

The ALJ properly followed the above process. First, he found that Ms. Diaz had not engaged in substantial gainful activity since the alleged onset of her disabilities. (R. at 24.) She was last employed as a home attendant, and ceased working in 1990 or 1991. (R. at 42, 258.) Second, the ALJ found that the plaintiff had a combination of impairments that were severe. The ALJ considered the numerous impairments Ms. Diaz complained of both in her Social Security Disability Report and in the administrative hearing—sleep apnea, asthma, vertigo, pain and difficulties with

- 6 -

her knees and right arm. The ALJ concluded that Ms. Diaz had a
severe combination of minimal osteo-arthritis in her knees, mild
asthma, moderate obesity, sleep apnea and vertigo that had been
"adequately controlled." (R. at 22.) Ms. Diaz made no mention of
depression in her disability report (R. at 42), nor did she raise
it when asked at her hearing about any complaints or symptoms she
had that kept her from working (R. at 258-60). However, the ALJ
specifically inquired regarding her depression at the hearing, and
included it in the "severe" combination of impairments even though
it was in partial remission. (R. at 22, 262.)

At the third step of the inquiry, the ALJ examined all of the
medical records and correctly determined that Ms. Diaz's
impairments did not meet or equal one of the listed impairments in
20 C.F.R. Pt. 404, Subpart P, App. 1, Regulation No. 4.

The ALJ proceeded to the fourth step where he determined Ms.
Diaz's residual functional capacity. Residual functional capacity
("RFC") is "the most you can still do despite your limitations."
20 C.F.R. § 416.945(a). In determining a plaintiff's RFC, the ALJ
must consider the plaintiff's severe and non-severe medically
determinable impairments. Id. This evidence includes the
plaintiff's limited physical and mental abilities. 20 C.F.R.
§ 416.945(b), (c). Substantial evidence existed for the ALJ to
conclude that the plaintiff, in spite of all her medical

- 7 -

conditions, was sufficiently able to perform her past relevant work as a home attendant, and had the RFC to perform other types of "medium work."[3] In considering the plaintiff's impairments and determining her RFC, the ALJ also gave sufficient consideration to the opinions of the treating physician and the plaintiff's subjective complaints of pain.

With respect to the plaintiff's knee arthritis and degenerative joint disease, the x-rays of the plaintiff's knees revealed that the plaintiff had only very minimal osteoarthritis of both knees and her treating physician, Dr. Shridharani, indicated that the arthritis was "very minimal." (R. at 164, 195.)  In addition, the plaintiff retained a full range of motion in her joints, and she showed no clinical signs of joint swelling or instability. (R. at 153, 159, 183).  Dr. Shridharani also reported that the plaintiff had "good response" to physical therapy and medication. (R. at 194, 242.)

The ALJ also considered the issue of the plaintiff's alleged left arm pain, which was cited in the medical records; however, the medical reports show that the pain was effectively treated through medication (R. at 168), the treating physician had ruled out bursitis (R. at 192), and the plaintiff did not list it as a

---

[3] "Medium work" is defined as work involving lifting no more that 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967.

problem at her hearing (R. at 258-62). The plaintiff complained
of right arm pain rather than left arm pain at the hearing. (R.
at 20, 259, 261.) The ALJ also noted that while the record
mentioned a diagnosis of carpal tunnel syndrome on numerous
occasions, the record is devoid of any evidence of limitations
from the condition. Moreover, the plaintiff refused recommended
treatments for the condition, such as surgery or injections. (R.
at 151, 242.) Dr. De Leon, a consulting physician who examined
the plaintiff, concluded that the plaintiff maintained full use of
her hands and arms in dressing and undressing and her fingers and
hand dexterity were intact. (R. at 183).

The ALJ considered the plaintiff's diagnosis of non-insulin
dependent diabetes mellitus. The medical records did not indicate
that the condition was disabling. The condition has been
monitored, and the plaintiff was instructed on a number of
occasions to change her diet to accommodate the condition. (R. at
100, 160-161.) Shortly after making some efforts to comply with
her physician's instructions, the record indicates that Ms. Diaz's
diabetic condition has improved. (R. at 167.)

With respect to the plaintiff's conditions of sleep apnea,
vertigo and asthma, all were determined by Dr. Shridharani to be
chronic but stable. (R. at 194.) Her sleep apnea, was mild (R.
at 191), and she has responded well to medication and is able to

- 9 -

sleep 6-7 hours a night and feels better in the mornings (R. at 226). The plaintiff's vertigo is also adequately controlled through medication. (R. at 146, 151.) Finally, impairments due to the plaintiff's asthma are minimal, because her attacks are infrequent, and the plaintiff reported going to the hospital only once in the six months prior to the hearing, and could not recall the last time before that visit. (R. at 260.) Thus, the record contained substantial evidence for the ALJ to conclude that the plaintiff's physical conditions did not significantly impair or reduce her RFC.

The ALJ concluded that the plaintiff was not disabled by an ongoing serious depressive illness. He noted, among other things, that the plaintiff was treated with therapy and medication with partial relief from her symptoms. (R. at 22.) The record contains no evidence or diagnosis that Ms. Diaz's depression limits her ability to understand, remember, or carry out instructions, or to respond properly to supervisors, co-workers, and work pressures. See 20 C.F.R. § 416.945(c). The record does contain notations from the plaintiff's treating physician, Dr. Shridharani, that Ms. Diaz suffers from "depression and anxiety" which "does or could produce pain" and limits her ability to tolerate stress. (R. at 244-45.) However the physician

explicitly instructed that any inquiries must be made to Ms. Diaz's psychiatrist. (R. at 245.)

The record also contains one conclusory statement from Union Settlement social worker/psychotherapist Ingrid Gomez, who did examine the plaintiff, that Ms. Diaz suffers from a "debilitating major depression." (R. at 246.) However, the extent to which her depression is debilitating was not stated, nor was any indication given regarding the expected length of the debilitation. The only evidence in the record addressing the length of the plaintiff's depression was the testimony by Dr. Friedman, a clinical psychologist who testified at the hearing. Dr. Friedman noted no history of treatment for depression beyond seven months prior to the hearing and did not expect any limitations on Ms. Diaz's ability to perform "simple and routine work activities" to last more than twelve months. (R. at 276.)

This conclusion was supported by documentation from Ms. Diaz's treatment facility indicating that the plaintiff has "vastly improved in mood and psychotic symptoms" (R. at 218), is able to conduct routine work activities in her own home, has responded well to medication and group therapy, and that her depression and impairments have substantially subsided and no longer bother her (R. at 213, 218). The record also shows that she is able to socialize with family and friends, has been able to

- 11 -

participate in dancing on two occasions, (R. at 223-24), and acted appropriately during her appointments with her social worker (R. at 218).

In determining the plaintiff's residual functional capacity, the ALJ did not give controlling weight to the opinion of Dr. Shridharani, who provided a functional assessment that was more consistent with light or sedentary work rather than medium work.[4] Dr. Shridharani concluded the plaintiff could lift up to five pounds frequently and up to twenty pounds occasionally; and carry up to five pounds frequently and up to ten pounds occasionally. (R. at 243.) He also found limitations on her ability to bend, squat, climb, reach, and the time that she could walk and stand and sit. (R. at 242-45.)

However, a treating physician's opinion is not entitled to controlling weight if it is not well supported by the medical evidence and is inconsistent with other more substantial evidence. 20 C.F.R. §§ 416.927(c)(2), (d)(2); see Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). Moreover, while medical opinions will generally be considered in making decisions such as the one

---

[4] "Light work" is defined as involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and includes work that may require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 416.967.

"Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Id.

determining whether a plaintiff is disabled, or one to determine

the residual functional capacity of a plaintiff, the final

responsibility for deciding these issues is reserved to the ALJ.

20 C.F.R. § 416.927; see Snell v. Apfel, 177 F.3d 128, 133 (2d

Cir. 1999).

The ALJ concluded that Dr. Shridharani's conclusions with

respect to the limitations on the plaintiff's residual functional

capacity were not sufficiently supported by the record. The ALJ's

finding was supported by the record. The record indicates that Ms.

Diaz was able routinely to go up and down the stairs to her fifth

floor walk-up apartment to conduct her regular errands, attend

church, and visit family and friends (R. at 66, 68); was able to

participate in dancing on at least two occasions (R. at 223-24);

and was able perform regular household chores such as cooking and

cleaning (R. at 65, 68, 218).

The medical report from Dr. De Leon, the consulting physician

who examined the plaintiff, stated in his evaluation of Ms. Diaz's

muskulo-skeletal system that she showed a full range of motion in

her spine and joints, and showed no swelling, tenderness, atrophy,

or instability. (R. at 183.) In addition, despite complaints of

pain in her knees, no swelling was evident. Id. Dr. De Leon

concluded the plaintiff was able to sit without limitation, and

was only mildly to moderately limited in her ability to walk,

- 13 -

stand, lift, or carry due to her obesity, knee pains, and asthma. (R. at 184.) In addition, during the hearing, the ALJ heard testimony from a medical expert, Dr. Cohen, who had reviewed the plaintiff's medical records and her subjective complaints, and concluded that the plaintiff had the residual functional capacity to perform "medium work." (R. at 268.)

Finally, the plaintiff's treating physician indicated that Ms. Diaz could not, due to her impairments, (1) take part in activities that involved heights due to her vertigo; (2) be around moving machinery; (3) be exposed to marked changes in temperature; (4) drive a car; or (5) be exposed to gas, dust or fumes. (R. at 244.) However, Mr. Ramnauth, the vocational expert who testified at the hearing, stated that the plaintiff's past work as a home attendant was classified as a "medium work" occupation, and did not require exposure to unprotected heights, dangerous machinery, or driving vehicles, nor did it require exposure to strong environmental irritants. (R. at 23.) As a result, the ALJ's determination regarding Ms. Diaz's physical ability to perform her past relevant work or other medium work is consistent with substantial evidence in the record.

Finally, despite the fact that the plaintiff failed to satisfy her burden of proof at the fourth stage of the process, as an alternative holding, the ALJ proceeded to the fifth step of the

- 14 -

analysis where he considered whether there was other work in the national economy available to the plaintiff that she could perform given her residual functional capacity to do medium work.

The ALJ satisfies this burden by resorting to the applicable medical vocational guidelines (commonly referred to as "the grids"). 20 C.F.R. Pt. 404, Subpart P, App. 2. See Butts v. Barnhart, 388 F.3d 377, 383-84 (2d Cir. 2004). In addition, when necessary, the ALJ may enlist the testimony of a vocational expert regarding other work that exists in the national economy. Id. at 383-84 ("It is clear under our cases that the Commissioner could [satisfy] her burden at step five through a vocational expert's testimony that [the claimant] could engage in other work existing in the national economy.").

In this case, the ALJ called a vocational expert. The vocational expert identified alternative occupations such as hand packager, food service worker, and machine packager that fell within the range of the plaintiff's exertional and nonexertional limitations and capabilities and which were available in substantial numbers in the local and national labor markets. (R. at 278.)[5] The Commissioner therefore also satisfied her burden at the fifth step of the analysis.[6]

_____

[5] Had the grids alone been relied on, the plaintiff would have been found not disabled. When consulting the grids, an ALJ must take the plaintiff's age during the entire period of alleged disability into consideration, which in

## CONCLUSION

For all of the reasons explained above, substantial evidence
exists to uphold the determination by the ALJ that the plaintiff
is not disabled.  Therefore, the Government's motion for judgment
on the pleadings pursuant to Federal Rule of Civil Procedure 12(c)
is **GRANTED.**  The Clerk is directed to enter judgment and to close
this case.

SO ORDERED.

Dated:     New York, New York
           June 14, 2007

                                    John G. Koeltl
                          United States District Judge

_____

this case was Feb. 27, 2002, the date of Ms. Diaz's initial application, to
June 20, 2003, the date of the ALJ's decision.  (R. at 16); see 20 C.F.R.
§ 416.963(b); Melvin v. Barnhart, No. 02 Civ. 4527, 2004 WL 2591948, at *5 n.2
(S.D.N.Y. Nov. 8, 2004).  Ms. Diaz was born on May 4, 1952, and on the date of
her initial application was forty-nine years old, a "younger individual" for
the purposes of the grids.  (R. at 16, 24, 79); see 20 C.F.R. § 416.963(c).
Given that she possessed a "limited education" (R. at 24), and that the
transferability of her work skills was not a material issue (id.), the ALJ
found that the plaintiff was not disabled using 20 C.F.R. Pt. 404, Subpart P,
App. 2, §§ 203.26, 203.27 (R. at 25).  However, by the time the plaintiff had
her hearing, on May 5, 2003, she was fifty-one, or "closely approaching
advanced age" for the purposes of the grids.  (R. at 16, 24); see 20 C.F.R.
§ 416.963(d).  Even if the ALJ had considered this age when consulting the
grids, the plaintiff still would have been found not disabled under 20 C.F.R.
Pt. 404, Subpart P, App. 2, §§ 203.19, 203.20.

[6] Because it was an alternative holding, the Commissioner does not appear to
rely on the fifth step of the analysis as a basis to grant the current motion.